**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNIVERSITY OF MASSACHUSETTS, : | |
| : | |
| and : | |
| : | (RMU) |
| ADVANCED CELL TECHNOLOGY, INC., : | Civil Action No.: 05-353 |
| : | Document No.: 16 |
| Plaintiffs, : | and |
| : | |
| v. : | Civil Action No.: 05-706 |
| : | Document No.: 17 |
| ROSLIN INSTITUTE, : | |
| : | |
| GERON CORPORATION, : | |
| : | |
| and : | |
| : | |
| EXETER LIFE SCIENCES, INC., : | |
| : | |
| Defendants. : | |

**MEMORANDUM OPINION**

D<small>ENYING THE</small> D<small>EFENDANTS'</small> M<small>OTION FOR A</small> P<small>ROTECTIVE</small> O<small>RDER</small>

**I.   INTRODUCTION**

These cases come before the court under 35 U.S.C. § 146, and involve a district court review of two decisions by the Board of Patent Appeals. The plaintiffs contend that the defendants are interfering with the plaintiffs' patents for animal cloning (Civ. Action No. 05-353) and methods of producing embryonic stem cells by nuclear transfer (Civ. Action No. 05-706). The animal cloning patent involves the method by which defendant Geron Corporation cloned the sheep "Dolly."

The plaintiffs initiated patent dispute proceedings (known as 'interference' proceedings), before the U.S. Patent and Trademark Office's Board of Patent Appeals and Interferences (hereinafter, "the Board"), against the defendants' patent applications. On December 20, 2004

and February 11, 2005, the Board found for the defendants as to both patent interferences.

In the current action, the plaintiffs seek reversal of the Board of Patent Appeals's decisions. Presently before the court is the defendants' motion for a protective order. Basically, the defendants would like to limit the scope of this action to a review of the Board of Patent Appeals's decision. For this reason, they seek a protective order limiting the scope of discovery to issues previously discovered and raised during the Board proceedings. Because the defendants fail to demonstrate that the discovery sought is not reasonably calculated to lead to the discovery of admissible evidence or that they would suffer clearly defined and serious injury absent the issuance of a protective order, the court denies their motion for entry of a protective order.

## II.   BACKGROUND

### A.   Patent Dispute Giving Rise to Civil Action 05-353

Civil Action 05-353 (hereinafter, the "353 Action"), involves competing patents regarding methods of cloning non-human animals. On January 10, 1997, Steven Stice, working for plaintiff University of Massachusetts, submitted a patent application to clone non-human animals using "nuclear transfer" with "a cycling (non-quiescent) donor cell." 353 Action Compl. ¶ 9. This application resulted in U.S. Patent No. 5,945,577 (hereinafter the "577 Patent"). *Id.*; Defs.' Mot. ¶ 2. From this patent, plaintiff Advanced Cell Technologies, Inc., as an assignee of the 577 Patent, cloned two heifers, affectionately named George and Charlie, from cells of an adult cow. 353 Action Compl. at 2.

Meanwhile, on August 29, 2000, Keith Campbell, working for defendant Roslin Institute, submitted a patent application, U.S. Patent Application No. 09/650,194 (hereinafter the "194

Application") to clone non-human animals, 353 Action Compl. ¶ 9; Defs.' Mot. ¶ 3, using "nuclear transfer" with "a quiescent donor cell," 353 Action Compl. at 2. From this patent, defendants Geron Corporation and Exeter Life Sciences, as assignees of the 194 Application, cloned a lamb, infamously known as "Dolly," from an adult ewe. *Id.* at 1-2.

### B.   Patent Dispute Giving Rise to Civil Action 05-706

Civil Action 05-706 (hereinafter, the "706 Action"), involves competing patents regarding methods of producing embryonic stem cells by nuclear transfer. 706 Action Compl. at 1-2. On March 22, 2001, the U.S. Patent and Trademark Office issued U.S. Patent No. 6,235,970 (hereinafter, the "970 Patent") to Steven Stice. *Id.* ¶ 9. On November 21, 2001, Keith Campbell filed his own patent application for a similar technology, U.S. Patent Application No. 09/989,126 (hereinafter, the "126 Application").

### C.   Procedural History

Disputing who owned the patent for the non-human animal cloning technology and the nuclear transfer technology, the parties initiated interference proceedings. Essentially, the purpose of the interference proceedings is to ascertain which patent holder is actually entitled to hold that patent and, conversely, which party is interfering with the legitimate patent holder's patent. The court will refer to the U.S. Patent Office's Interference proceedings regarding the non-human animal cloning technologies as the "746 Interference" and to the U.S. Patent Office's Interference proceedings regarding the nuclear transfer technology as the "192 Interference."

On December 20, 2004, the Board found in favor of Campbell's patent as to its patented method for cloning non-human animals, 353 Action Compl. ¶ 12, and on February 11, 2005, the Board found in favor of Campbell's patent as to its nuclear transfer technology. Having secured unfavorable rulings by the Board as to both the 746 Interference and the 192 Interference

actions, the plaintiffs initiated the 353 Action and the 706 Action respectively. *See* 353 Action Compl.; *See* 706 Action Compl. In these actions, the plaintiffs argue that the court should set aside the Board's decisions because they are, for various reasons, erroneous.

The parties are currently enmeshed in a discovery dispute. As part of the plaintiffs' preparation for their case, they seek depositions of Ian Wilmut, a named inventor, and David Wells, a witness who submitted a declaration in the Interference actions. Pls.' Opp'n at 1. The defendants have moved for a protective order to prevent these depositions from going forward. The court now turns to that motion.

### III.   ANALYSIS

#### A.   Legal Standard for the Issuance of a Protective Order

Protective orders are issued for good cause shown and to prevent annoyance, embarrassment, oppression, undue burden, or expense. FED. R. CIV. P. 26(c). A motion for a protective order usually follows the movant's unsuccessful attempt and both parties' good faith efforts to resolve the matter. *Id.* A protective order may, *inter alia*, deny discovery completely, limit the conditions, time, place, or topics of discovery, or limit the manner in which the confidential information is to be revealed. *Id.*; *Burka v. Dep't of Health and Human Servs.*, 87 F.3d 508, 518 (D.C. Cir. 1996). The moving party bears the burden of showing that there is good cause for the issuance of the order. FED. R. CIV. P. 26(c). Since such a motion limits the liberal discovery rules, "good cause" is only established when the movant demonstrates that disclosure would cause a clearly defined and serious injury. *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995). A district court may not grant a protective order without a showing of good cause. *EEOC v. Nat'l Children's Ctr., Inc.*, 98 F.3d 1406, 1411 (D.C. Cir.

1996).  In assessing good cause, a district court must exercise its discretion in light of the relevant facts and circumstances of the particular case.  *Tavoulareas v. Wash. Post Co.*, 111 F.R.D. 653, 658 (D.D.C. 1986) (Gasch, J.) (applying *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 599 (1978) (holding that the assessment of the common law right of access to information is best left to the discretion of the trial court)).  A mere showing that discovery may involve inconvenience and expense will not meet this threshold requirement.  *Lehnert v. Ferris Faculty Ass'n-MEA-NEA*, 556 F. Supp. 316, 318 (W.D. Mich. 1983).  Furthermore, if a court were to issue the protective order, the court must articulate specific facts justifying a protective order since that is imperative to ensure adequate appellate review.  *See Nat'l Children's Ctr.*, 98 F.3d at 1411.

### B.   The Court Denies the Defendants' Motion for a Protective Order

The plaintiffs bring these cases under 35 U.S.C. § 146, which governs the appeals to a federal district court of Interference decisions by the Board of Patent Appeals.  35 U.S.C. § 146.  The statute provides, in pertinent part, that "any party to an interference dissatisfied with the decision of [the Board] may have remedy by civil action."  *Id.*  In this appellate-type proceeding, "the record in the Patent and Trademark Office shall be admitted on motion of either party . . . the further cross-examination of the witnesses as the court imposes, without prejudice to the right of the parties to take further testimony."  *Id.*

The defendants argue that because the district court's review of Interference proceedings under Section 146 is limited to issues presented to, and decided by, the Board, the court should limit the scope of discovery to information previously sought by the plaintiffs in preparation for the Interference proceedings.  Defs.' Mot. at 1-2 (quoting *Conservolite, Inc., v. Widmayer*, 21 F.3d 1098, 1102 (Fed. Cir. 1994) for the proposition that "[a] proceeding under Section 146 is

5

not a chance for a party to reconstruct its case, based on a new litigation strategy, leapfrogging the administrative process"). While the court agrees with the defendants insofar as the scope of the current proceedings are not panoptic, the defendants' position confuses admissibility with discoverability.[1]

The defendants' argument rests on an assumption that information sought in the depositions of Wilmut and Wells falls outside the scope of these section 146 proceedings. Defs.' Mot. at 13-14 (stating that "the scope of such evidence allowed to be presented a trial in a § 146 action has been severely limited"). However, the proper scope of discovery is broader than the scope of admissible evidence, and includes any matter "relevant to the claim or defenses of any party." FED. R. CIV. P. 26(b)(1). What's more, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*; *Food Lion, Inc. v. United Food & Comm'l Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997); *see also Smith v. Schlesinger*, 513 F.2d 462, 473 n.37 (D.C. Cir. 1975) (noting that "a party may discover information which is not admissible at trial if such information will have some probable effect on the organization and presentation of the moving party's case").

Section 146 of Title 35 does nothing to limit the scope of discoverable information. *See* 35 U.S.C. § 146. In fact, the statute contemplates possible "further cross-examination of the witnesses" and expressly provides that the proceedings shall proceed "without prejudice to the right of the parties to take further testimony." *Id.*

---

[1] Indeed, in arguing that "refusal to permit discovery in a § 146 appeal is appropriate, the defendants cite *Adhesives Research, Inc. v. Minn. Mining and Mfg. Co.*, No. 01-0637 (D.D.C. Sept. 2, 2003), an unpublished decision concerning the admissibility of evidence, not the proper parameters of discovery which, as the court will discuss *infra*, are two separate animals (pardon the pun). Defs.' Mot. at 15.

The defendants cite a 2004 case from the Western District of Washington in which the trial judge ruled that while section 146 "allows for further testimony, it does not mandate further discovery." Defs.' Mot. at 16 (quoting *Trustees of Dartmouth College v. Immunex*, No. 03-2676P (W.D. July 28, 2004)). Although section 146 does not mandate further discovery, it also does not dictate any limitation on discovery. 35 U.S.C. § 146. For this reason, and given that "the standard of relevance in discovery is a liberal one," *Food Lion*, 103 F.3d at 1012 (internal citations omitted), the court does not find the defendants' reliance on *Dartmouth College* persuasive.

Under these circumstances, the court will deny the defendants' motion for a protective order. The plaintiffs seeks the depositions of Ian Wilmut, a named inventor, and David Wells, a witness who gave testimony for the Interference actions. Pls.' Opp'n at 1. The defendants do not deny these individuals' close connection with the issues germane to this case. Instead, as previously mentioned, they argue that the plaintiffs should be limited to discovery previously sought for the Interference actions. Defs.' Mot. at 1. The defendants have not provided any argument suggesting that these depositions are not "reasonably calculated to lead to the discovery of admissible evidence," FED. R. CIV. P. 26(b)(1), or that the depositions of these two individuals would cause the defendants clearly defined and serious injury, *Glenmede Trust Co.*, 56 F.3d at 483. Under these circumstances, they have failed to demonstrate "good cause" for the

court to issue a protective order.[2]  *Id.*  While the discovery sought may not lead to admissible evidence, the defendants have not demonstrated that the plaintiffs are attempting "to roam in shadow zones of relevancy."  *Food Lion*, 103 F.3d at 1012.  With regard to any logistical complications in conducting these depositions, Defs.' Mot. at 20 n.3, the court is confident that the parties will be able to derive a mutually amicable solution without any need for judicial involvement.

### IV.   CONCLUSION

For the foregoing reasons, the court denies the defendants' motion for entry of a protective order.  An order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously issued this 20th day of June, 2006.

                                        RICARDO M. URBINA
                                        United States District Judge

---

[2]  The court notes, however, that its denial of the defendants' motion for a protective order in no way affects the court's view that the scope of these proceedings is limited to a narrow review of the Patent Board's decisions.  *Goliath Hundertzehnte Vermoegensverwaltungsgesellschaft mbH v. Yeda Research & Dev. Co.*, 68 U.S.P.Q. 2d. 1703, 2003 WL 22830014 (D.D.C. 2003) (ruling that judicial review, limited to issues fully addressed and argued to the administrative agency, is "consistent with the modern scheme of administrative law in which specialized agencies are responsible for initial decisions of complex factual and legal matters") (internal citations omitted); *see also*, *Gen. Instrument Corp. v. Scientific-Atlanta, Inc.*, 995 F.2d 209, 214 (Fed. Cir. 1993) (indicating that "issues may only be deemed raised for section 146 purposes if the record clearly demonstrates that the issue was undeniably placed before the examiner-in-chief, and one or more parties insisted that the issue be resolved in the process of deciding [the underlying issue]").  Noting the fact that the issues raised in interference proceedings are "highly arcane and specialized," the Federal Circuit reversed a district court ruling predicated on matters not raised in the underlying administrative proceeding.  *Conservolite Inc. v. Widmayer*, 21 F.3d 1098, 1100 (Fed. Cir. 1994).  Because the court's ruling herein addresses the scope of discovery rather than the scope of these proceedings (discovery being somewhat broader), the court need not address at this time the defendants' contention that the plaintiffs "seek improperly to reconstruct . . . the cases they lost before the [U.S. Patent and Trademark Office]."  Defs.' Mot. at 1.  Given this court's prior, and clear, indication that it will limit its review to matters "raised *and fully developed*" at the interference proceedings, *Yeda Research*, 68 U.S.P.Q. at 1704 (emphasis in original), the court is confident that the plaintiffs will not attempt to distend the scope of this case.